

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:09cr160

DENARD EDWARD CARRINGTON

### MEMORANDUM OPINION

This matter is before the Court on the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 123) and the SUPPLEMENT TO MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 124). Having considered those papers and the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 127), the REPLY IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 130), the briefs in response to the Court's ORDER (ECF No. 140), which are the defendant's SUPPLEMENTAL MEMORANDUM PURSUANT TO ORDER DATED AUGUST 25, 2021 (ECF No. 143), the United States' Supplemental Pleading in Opposition to Defendant's Motion for Compassionate Release (ECF No. 145), and the REPLY TO GOVERNMENT SUPPLEMENTAL PLEADING IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF No. 146), the MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 123) will be granted.

## BACKGROUND

Denard Edward Carrington was charged in a Superseding Indictment (ECF No. 12) with conspiracy to distribute cocaine hydrochloride (Count One); possess with intent to distribute cocaine hydrochloride (Count Two); possession of firearms in furtherance of a drug trafficking crime (Count Three); possession of firearms/ammunition by convicted felon (Count Four); and possession of an unregistered firearm (Count Five).  The United States dismissed Count One of the Superseding Indictment. Carrington plead guilty to Counts Two, Four and Five, and he was convicted of Count Three by the jury.

The combined adjusted offense level was 28.  Carrington's criminal history category was IV.  The Guidelines called for sentences of 110 to 137 months (Count Two); 360 months to life (Count Three); 110 to 120 months (Count Four); and 110 to 120 months (Count Five).  The sentences for Count Two, Four, and Five were to be served concurrently to each other.  The sentence on Count Three was to be served consecutively to the sentencese on Counts Two, Four, and Five.

Carrington was sentenced to 60 months imprisonment on Counts Two, Four and Five, to be served concurrently, and to 360 months, the mandatory minimum, on Count Three to be served consecutively

to the 60 month imprisonment imposed on Counts Two, Four and Five. The total sentence was 420 months.

Carrington did not receive any reduction in the offense level notwithstanding his pleas of guilty because the pleas came on the eve of, and during, trial.[1]  In particular, on the morning of trial Carrington pled guilty to Count Four (the possession of three firearms and ammunition by a convicted felon).  The United States moved to dismiss Count One (the conspiracy to distribute 500 grams or more of cocaine).  Then, trial began on Counts Two, Three and Five.  The United States presented its evidence; Carrington moved for judgments of acquittal which were denied; and the next morning, Carrington entered a plea of guilty to Count Two (possession with intent to distribute 500 grams or more of cocaine) and Count Five (possession of an unregistered firearm).  That left the jury to determine whether the United States had proved Count Three which charged Carrington with possessing a AK47 assault rifle, a Mac-10 machine gun, a 3.57 caliber firearm and ammunition in furtherance of the drug trafficking crime that had been charged in Count Two. As noted above, the jury convicted Carrington of Count Three.

---

[1] Had Carrington received a two-level reduction, the Guideline range for Counts Two, Four, and Five would have been 92 to 115 months, concurrent.  However, on those counts, Carrington's sentence was 60 months, well below the Guidelines.

The evidence showed that Carrington was a substantial drug dealer trafficking in significant quantities of cocaine. The amount attributed to Carrington was 2.75 kilograms of cocaine hydrochloride. During a search of Carrington's residence, the following items were seized: a bag in the master bedroom: 112.5 grams of cocaine; a bag containing 548.9 grams of cocaine in a nightstand; and nearby a safe that contained $25,000.00 in United States currency and a heat sealed bag containing $30,000.00 worth of $100 bills underneath the mattress in the master bedroom.[2] Carrington drove a Mercedez Benz and a Range Rover. The record shows that Carrington had no reported income in 2006, 2007 and 2009, and a total reported income of $535.35 in 2008.

In the area where the drugs were found, the search produced the assault rifle and machine gun, ammunition, and pistols. In sum, the record established that the weaponry was eminently associated with the significant cocaine distribution operations being conducted by Carrington. The possession of the firearms in proximity to the drug dealing is serious in its own right, but particularly so, given that Carrington had a previous conviction for attempted malicious wounding and for discharging a firearm within 1,000 feet of school property. The offenses of conviction

---

[2] A subsequent examination of the cash by using an Ion scan device established the presence of a significant quantity of cocaine on the cash that had been seized during the search.

4

in this case were committed while Carrington was on a term of good behavior pursuant to the sentence in state court for that firearm offense.

Carrington was born on July 2, 1987.   The offense conduct occurred between June 2008 and April 2009.   So, at the time Carrington was convicted he was 22 years old and at the time of the offense conduct he was 21 and 22.

Unlike most petitions for compassionate release pursuant to Section 603(b) of the First Step Act, this motion is not based on any health related issue.   As Carrington puts it "[t]his is an unusual case."   That is said to be so for several reasons.

First, the motion makes the point that Carrington was 20 to 21 years old at the time of the offenses of conviction.   However, it appears from the record that Carrington was born in 1987, and that he was 21 and 22 when he was committing those offenses.   Youth at the time of the offense conduct is a principal argument in the motion, because Carrington was influenced by an adult woman to commit the crimes for which he was sentenced, because the older woman encouraged him to go to trial, and because of recent decisions respecting the sentencing of youthful offenders.

Second, the motion relies heavily on the assertion that Carrington allegedly was offered an opportunity to plead guilty and to receive a considerably lower sentence, but chose not to

allegedly because he felt some obligation to an older woman with whom he was in an intimate relationship and because the older woman urged Carrington to reject a plea offer of 12 years and go to trial. (ECF No. 114-2)   The argument thus is that Carrington's decision to go to trial produced a long and disparate sentence because the woman (who was charged with largely the same offense conduct) received a 120 month sentence after being allowed to plead guilty to maintaining a drug-involved premises.

According to Carrington, he was offered the opportunity for a twelve year sentence if he pled guilty.   The prosecuting Assistant United States Attorney has no recollection of such an offer, but there is some reliable evidence from Carrington's trial counsel that there may have been such an offer.  (ECF No. 114-2)

Third, Carrington asserts that he has availed himself of numerous opportunities for rehabilitation in the time that he has been in prison (ECF No. 123, Ex. D).  The record reflects that Carrington has received his GED, has taken many educational classes, and has assisted other inmates to obtain their GED by tutoring them.  Moreover, two staff members at the Bureau of Prisons have written letters of support on his behalf.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may

reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i).  <u>United States v. White</u>, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

In this case, Carrington takes the view that extraordinary and compelling reasons exist to reduce his sentence because his sentence is a long one that he could have avoided if he had accepted a plea.  To that, Carrington adds the argument that he was youthful at the time of the offense and that he was inveigled into drug trafficking by an older woman with whom he was romantically involved,  who although charged with essentially the same offense conduct, received a sentence of ten years (approximately one-third of the sentence that Carrington received).  The record shows that the female co-defendant was older than Carrington; and that she introduced him to a drug supplier and set him on the road to be the significant drug dealer whose offense conduct is shown by the record.  That was borne out by the record at the woman's sentencing where the prosecuting Assistant United States Attorney represented to the Court that:

> [Ms. Council] is the one who introduced Carrington to TJ Croxton and made a guy who was never a drug dealer into a drug dealer. She helped him get started in his business by

> making that introduction and participated in
> helping him with a person that she has had a
> 20-year relationship with dealing drugs.
>
> So it is because of her that Denard Carrington
> is doing 35 years, to be quite frank.  He is
> a 22-year-old guy, she is a 38-year-old woman.
> She is street savvy and she knows the game and
> knows how to play the system.
>
> . . . She introduced her boyfriend [Mr.
> Carrington] to the supplier.  She had the
> connections.  She was the CEO of that
> organization.  And she knew what was going on.
>
> . . . Her associations and her affiliations
> are TJ, Terry Croxton, a drug dealer; also
> Carl Carrington, a drug dealer; [and] Denard
> Carrington, now a drug dealer . . .

United States v. Zsa Zsa Council, E.D. Va. No. 3:09cr378, Trans.
of Sent. Hrg. June 9, 2010, at 142-43, Exhibit A to ECF No. 123.

It is thus a combination of factors that Carrington says
create the extraordinary and compelling reasons that warrant
relief (his age at conviction, the role of his older co-defendant
in enticing him to be a drug dealer, and the asserted extraordinary
length of his sentence both absolutely and when compared to the
older woman's sentence.  Finally, Carrington folds into the mix
his post-offense rehabilitation.  These, in combination, says
Carrington, establish "extraordinary and compelling reasons" to
reduce his 420 month sentence.)

In United States v. McCoy, 981 F.3d 271, 385 (4th Cir. 2020),
the Fourth Circuit held that district courts are allowed to "make

8

their own independent determination of what constitutes an 'extraordinary and compelling reason [] under' section 3582(c)(1)(A), as consistent with the statutory language." Id. McCoy also held that, when considering whether extraordinary and compelling reasons exist for sentence reduction, district courts are permitted to consider the "'unusual length'" of a sentence as well as "gross disparity" between those sentences and the sentence that Congress now believes to be an appropriate penalty for the defendant's conduct. Id. (emphasis added). Of course, in this case, there is no difference between the sentence that Carrington received on Count Three (and of which he here complains) and the sentence for that offense as Congress now believes to be appropriate because the sentence has not been changed by Congress. So that aspect of McCoy does not aid Carrington.

McCoy also permits the district courts to consider other factors. Therefore, after McCoy, a determination of "extraordinary and compelling reasons" can take into account the defendant's age at the time of the commission of the offense, as well as the amount of time already served, together with steps taken toward rehabilitation. Id.[3] Other factors can be considered as well.

_____

[3] One reasonably might ask whether the breadth of the inquiry permitted by McCoy and its progeny materially undercuts the finality of sentencing and opens the door to considerations not reasonably contemplated by Congress when it enacted the statutory change that allows courts to entertain motions for compassionate

<u>United States v. Osonan</u>, No. 21-7150, United States Court of Appeals for the Fourth Circuit (Feb. 17, 2022) (requiring a district court to consider whether a life sentence for piracy was unjust, at least sufficiently to permit "meaningful appellate review" if that asserted ground for compassionate relief). The more complex the motion for compassionate release, the more detailed need be the district court's explanation. <u>Id.</u> at 4 (citing <u>United States v. High</u>, 997 F.3d 181 (4th Cir. 2021).[4]

The United States takes the view that Carrington's case is quite unlike those discussed in <u>McCoy</u> and the companion cases decided along with it.[5] Therefore, the United States argues that Carrington has not met his burden for establishing any extraordinary and/or compelling reason why his sentence ought to be adjusted as he requests.[6]

It is axiomatic that Carrington's motion must be assessed in perspective of the sentencing factors proscribed by 18 U.S.C. §

---

release. Nonetheless, <u>McCoy</u> is the law in the circuit, and district courts are obligated to do as it instructs, collateral and unintended consequences notwithstanding.

[4] If carried to the extreme, that instruction could produce the need to review convoluted, meritless arguments. But that clearly is not what <u>High</u> requires.

[5] The companion cases are <u>United States v. Bryant, Scott, and Decator</u>, 981 F.3d 271 (4th Cir. 2020).

[6] Carrington asks that his sentence be reduced to time served or to a term of eighteen years total (216 months).

3553(a). <u>United States v. High</u>, 997 F.3d at 185. However, Carrington's opening brief makes no attempt to measure the propriety of sentence reduction with respect to those factors. Rather, he simply argues that there is an extremely lengthy sentence that was the result of an ill-considered plea decision; that he committed the offenses of conviction when he was a youth of 21 or 22 and when he was acting under the romantic influence of an older woman who received a much lighter sentence; and that his post-offense rehabilitation supports his request for relief.

To begin, Carrington makes the point that he was relatively young at the time he committed the crimes at issue of which he was convicted. And, indeed, he was. His argument on this point cites recent studies that discuss impulsive behavior and poor judgment on the part of adolescents whose brains are not fully developed. He cites also a study that concludes that, in most people, the brain does not reach full maturity until the age of 25.

Also, Carrington relies on the Supreme Court's decision in <u>Roper v. Simmons</u>, 543 U.S. 551, 572-73 (2005) for his argument that his age at the time of his crimes counsels in favor of a sentence reduction. However, <u>Simmons</u>, as Carrington acknowledges, was focused on the age of adolescents, not people aged 21 and 22. Thus, Carrington agrees that the impulsivity issues are "most acute in the juvenile justice context." Nonetheless, he argues that

11

the same principles that animated <u>Simmons</u> have general applicability to sentencings of defendants in their twenties. For that contention, he cites <u>United States v. Gall</u>, 552 U.S. 38 (2007), along with cases that permit district courts to consider the age of defendants in assessing whether there are extraordinary and compelling reasons for a sentence reduction.

His argument, as far as it goes, is accurate on a general level, but there is nothing in the record that shows how the general precepts in those studies and judicial decisions actually apply to Carrington. In fact, the presentence report here shows that Carrington has no history of psychological or psychiatric treatment other than a childhood diagnosis of attention deficit disorder (ECF No. 116, ¶ 49). And Carrington's Virginia Department of Corrections' records reflect that a mental health screening established the absence of any history of mental health services or needs.

Although Carrington was actively engaged in the drug trade, the record (ECF No. 116) teaches that he only occasionally partook of alcohol and marijuana. Thus, his crimes were not precipitated by "a drug problem."

In sum, the record presents no connection between Carrington's conduct in this case and the studies and decisions on which he relies to argue that, at the time he committed the offense

of conviction, the age of his brain counsels in favor of a finding that the offense was one of youthful impulse.

Nor does the record otherwise teach that Carrington's crimes are the product of immaturity or an aberrant youthful indiscretion. Indeed, it would be illogical to conclude that the extensive drug trafficking shown by this record was the product of an undeveloped, immature mind. More importantly, Carrington points to nothing in the record that would permit a finding that the offenses of conviction here were the product of impulsivity or were crimes of impulse which came about as the result of an immature mind.

Next, and relatedly, Carrington's filings[7] and counsel's filings[8] argue that he was in an intimate relationship with a woman 21 years his senior and that she was highly influential in introducing him to the drug trade. Even the prosecution subscribed to the verity of that assertion at the sentencing of the older woman. Thus, while there is no medical evidence that would bring Carrington's case into the realm of the age-related studies and cases relied on by counsel, there is a practical basis upon which to conclude that Carrington's involvement in the drug trade was influenced by an older person with whom he was romantically involved. However, there is nothing in the record that connects

---

[7] ECF Nos. 132, 138 (*pro se* filings).

[8] ECF Nos. 123, 130, 143 and 146.

13

the influence of the older woman with the possession of firearms in furtherance of drug trafficking crimes, the factor that drove the long sentence that is under attack here.

The analysis then turns to the length of the sentence. Here, the sentence under attack is a mandatory minimum of thirty years (360 months) that was imposed on Count Three. Carrington correctly argues that there is no evidence of violence in the offense conduct or, indeed, in his conduct of the drug trade. However, the search in this case produced a virtual arsenal of heavy weaponry which obviously was available to be used in the defense of the drug product and the drug proceeds, both of which were in abundant supply when the search was accomplished. That arsenal casts the drug dealing in a very serious light.

Moreover, as the United States points out, Carrington has a previous conviction involving the use of a firearms. In particular, he was convicted of attempted malicious wounding and discharging a firearm within 1,000 feet of school property. That conduct occurred during a high school football game and resulted in two convictions. And, Carrington was on a term of good behavior on the sentence for those convictions when he committed the offense conduct in this case.[9]

---

[9] Although, as Carrington argues, that the offense conduct for this violent incident occurred in 2006, some sixteen years ago, it occurred only two years before the offense conduct in this case.

14

With all this in mind, a lengthy sentence was indeed appropriate to protect the public and to deter the defendant. Carrington acknowledges as much by asking for a reduction to 216 months (as an alternative to time served).

One cannot read Carrington's papers without concluding that, at base, his motion is an attack on the mandatory minimum sentence of 360 months attributable to the conviction on Count Three. For that reason, the Court asked the parties to brief whether a motion for compassionate release for non-health reasons could be granted when to do so would reduce the sentence below the mandatory minimum set by statute for the offense conduct.

Both the United States and Carrington responded to that directive by asserting that the Court has such authority. (See ECF Nos. 143, 145, and 146). Both parties find McCoy persuasive on that point because there the Fourth Circuit held that the First Step Act conferred on district courts the authority to make their own decisions of what constitutes an extraordinary and compelling reason, and freed district courts to consider the full panoply of any alleged reason raised by the movant. (ECF Nos. 143 and 145). However, contrary to what counsel argue on that point, neither McCoy (nor the cases consolidated with it) involved a situation in which, as here, Congress had not changed the mandatory minimum to which the defendant had been sentenced. And, indeed, the United

15

States acknowledged that there is "little or no appellate authority addressing whether a district court can reduce a sentence below an unchanged mandatory minimum. (ECF No. 145, p. 6). Both sides, however, cite district courts, including one from this district, in which such reductions have been made.

Moreover, and quite curiously, even while it takes the position that the Court is authorized to reduce the sentence below the mandatory minimum, the United States argues extensively that to grant the defendant's motion here, is tantamount to substituting the Court's judgment about what the appropriate mandatory minimum for the offense of conviction should be because Congress has not changed the mandatory minimum for the offense of conviction since the time of Carrington's conviction. Indeed, according to the United States, to grant Carrington's motion would be to "engage in the sort of 'freewheeling judicial policymaking' the Supreme Court has repeatedly resisted." (ECF No. 145, p. 16, citing Pereida v. Wilkinson, 141 S. Ct. 754, 766-67 (2021)). To underscore that view, the United States goes on to say that "[t]o transmogrify Congress's legislative judgment [in the First Step Act] into a post hoc basis for early release from prison is to place more weight on the words 'extraordinary and compelling' than those words can fairly bear." These points amount to an argument that the Court is not authorized to reduce a sentence below the mandatory

16

minimum.  And, quite frankly, there is force to the arguments made by the United States.

However, the Court is obligated to apply the principles of compassionate release reflected in the decisions of the United States Court of Appeals for the Fourth Circuit.  And, in McCoy and its progeny, the Fourth Circuit opened the door to precisely that kind of assessment by the district courts.  And, district courts in this circuit have granted relief where the mandatory minimum sentence was extremely long and where other factors were found to warrant such relief.  Those decisions generally have been based on the conclusion that there is some combination of the circumstances presented to warrant the basis for compassionate release.

Applying the controlling circuit precedent here thus warrants a look at Carrington's proffered combination argument.  To begin, the record is clear that Carrington committed the offense of conviction while he was quite youthful (although not an adolescent) and that he was then acting under the influence of an older woman with whom Carrington was romantically involved.  Even the prosecution attributed Carrington's unlawful conduct to that older woman so his argument to that effect bears crediting.

The record also supports a finding that Carrington's refusal to accept a plea offer (for twelve years imprisonment) was ill-considered.  Certainly, there was overwhelming evidence to convict

17

on Count Three and it appears irrational not to accept a plea agreement. And the record supports Carrington's contention that his older paramour urged him to reject a plea offer of 12 years.[10]

The next factor in the combination on which Carrington relies is the disparity between the sentence of 121 months meted out to his co-conspirator (the older woman) and Carrington who was sentenced to 420 months (360 mandatory months of which were attributable to the firearm charge in Count Three). There is no doubt that the sentences are disparate. On the other hand, the co-conspirator was not convicted of either the drug or firearm offense.

Rather, she was guilty of, and sentenced on, a charge of maintaining a drug-involved property. On the other hand, she was charged with both drug and firearms offenses (but not the automatic weapons charge that produced the mandatory minimum). With that in mind, it is pertinent that the United States considered ten years to be an appropriate punishment for the co-conspirator. That, and the fact that there is evidence that the United States offered Carrington a twelve year sentence, provide support for the conclusion that a sentence of 420 months is not only disparate, but an unwarranted one.

---

[10] The prosecution says that she does not recall making an offer for twelve years, but the defense counsel's letter says that there was such an offer. (ECF No. 114-2)

Finally, there is evidence of significant post-offense rehabilitation and there is evidence that Carrington has significant family and community support as well as support from officials within the Bureau of Prisons, the latter of whom support reduction of Carrington's sentence.

The Court has received scores of motions for compassionate release. The degree of rehabilitation evinced by Carrington is among the most significant evinced in those many motions. And, the letter from the Bureau of Prisons personnel who have witnessed and supervised that rehabilitation are unprecedented. Taken as a whole, the record here supports a conclusion that Carrington is rehabilitated (to the extent that judgment can be made on the basis of what one has accomplished while in prison).

It is, of course, necessary to consider the Section 3553(a) factors. The nature and circumstances of the offenses of conviction are fully outlined above and the offenses are, indeed, serious ones. The characteristics and history of the defendant also have been considered and discussed above. Carrington has a criminal history category IV which includes a crime of violence. And, they show a youthful offender who was ushered into the drug trade by an older person. That drug trade was extensive and guns were possessed in furtherance of the drug trafficking.

Thus, the record shows a need for a sentence that protects the public and deters Carrington from further criminal conduct and that promotes respect for the law. The question is whether a sentence of 420 months (35 years) in prison is greater than necessary to achieve those objectives where, as here, the circumstances of the offense include a youthful offender, who entered the drug trade at the instance of an older paramour who received a much lighter sentence and where there is strong evidence that the defendant is rehabilitated.

This is a very unusual case and, notwithstanding the Court's reservations about the propriety of granting compassionate release for non-health reasons, thereby reducing a sentence below an unchanged mandatory minimum, it appears that, at least in this circuit, district courts are permitted to do that. Moreover, the Court is convinced that, taken as a whole, and considering the unique combination of circumstances presented, this record demonstrates that extraordinary and compelling reasons exist to warrant reducing the defendant's sentence. In his petition, Carrington seeks a reduction of his 420 months (35 year) sentence to 216 months (18 years). That would be 156 months (thirteen years) on Count Three that would be served consecutively to the 60 month concurrent sentences imposed on Counts Two, Four and Five. On this record, that sentence is sufficient, but not greater than

20

necessary, to achieve the objectives of Section 3553(a), in particular, protection of the public, deterrence of the defendant, and a just punishment.

### CONCLUSION

For the foregoing reasons, the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 123) will be granted, and the term of imprisonment will be reduced to 216 months, consisting of 60 months on Counts Two, Four, and Five to be served concurrently and 156 months on Count Three to be served consecutively to the term imposed on Counts Two, Four, and Five.

It is so ORDERED.

_____ /s/ REP
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: March ___, 2022

21